# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ANDREW DRAKE, On behalf of himself and
a class of employees and / or former employees,
similarly situated,

                    Plaintiff,

v.                                                   Case No. 14-cv-216

AEROTEK, INC.,

                    Defendant.

## SECOND AMENDED COMPLAINT

Plaintiff, on behalf of himself and a class of similarly situated employees and / or former employees, through his attorneys Gingras, Cates & Luebke, and Axley Brynelson, LLP, hereby files his Second Amended Complaint against Defendant Aerotek, Inc. as follows:

### INTRODUCTION

1.      This is a class action for unpaid wages and overtime brought pursuant to the Wisconsin wage payment and overtime laws, Wis. Stats. Secs. 103, 104, 109.01, *et seq.*

### JURISDICTION AND VENUE

2.      This Court has original jurisdiction over the claims pursuant to 28 U.S.C. sec. 1332(d)(2) because the amount in controversy exceeds $5,000,000 and the named plaintiff is a citizen of a state different from the state in which the defendant is incorporated and / or has its principal places of business.

3.      Venue is proper pursuant to 28 U.S.C. sec. 1391(a) and (c) because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district,

and because the defendant resides in this district in that it regularly conducts business within this district, and thus is subject to personal jurisdiction.

## PARTIES

4.      Plaintiff Andrew Drake is a U.S. citizen and a citizen of Wisconsin who resides at 965 Allison St., Sun Prairie, Wisconsin.

5.      Drake is an "employee" of Defendant within the meaning of Wis. Stat. secs. 103.001(5), 104.01(2) and 109.01(r).

6.      Defendant Aerotek, Inc. ("Aerotek") is a staffing agency and has been a Maryland corporation at all times material hereto, is subject to Maryland law, and is registered as a foreign corporation with the State of Wisconsin since 2004 and maintains more than one office in Wisconsin; its principal place of business is at 7301 Parkway Dr., Hanover, Maryland, and its registered agent is CSC-Lawyers Incorporating Service Company, 8040 Excelsior Drive, Ste. 400, Madison, Wisconsin. Under 28 U.S.C. sec. 1332(c)(1) it is deemed to be a citizen of Maryland.

7.      Aerotek is an "employer" within the meaning of Wis. Stats. Secs. 103.001(6), 104.01(3) and 109.01(2).

## CLASS ALLEGATIONS

8.      Plaintiff seeks to represent a Wisconsin class (Counts I, II, III and IV), which in turn consists of three subclasses.  Generally, the class consists of all Wisconsin citizens who worked for Defendant as recruiters during the training period and / or after the training period. The class consists of the three following subclasses.

A.      The first subclass consists of all Wisconsin citizens who meet the following criteria: recruiters who worked for Defendant during a training

period ("Recruiter Trainees") who engage or have engaged in the tasks and activities described in paragraph 9A without receiving proper compensation, within the two years preceding the original filing of the complaint.  There are between 500 and 1000 members of the proposed class, both former and present employees who engage or engaged in recruiting activities and other work for Defendant during the recruiters' training period.

B.      The second subclass consists of Wisconsin recruiters who completed the training period and were misclassified as "Exempt" under State Law ("Post Training Recruiters").

C.      The third subclass consists of all Wisconsin recruiters who worked through lunch periods but were not paid for that work and / or who were not allowed to leave the premises for work.

9.      There are questions of law and fact common to the Classes, including the following:

A.      Whether Defendant in following its policies, procedures and practices required Plaintiff and Class members to engage in the following work activities without being paid or properly being paid overtime for said work activities:

i.       Calling or otherwise communicating with clients or prospective clients;

ii.      Calling or otherwise communicating with prospective employees to match them with clients;

3

         iii.      Meeting with coworkers and supervisors; and

         iv.      Meeting with clients or prospective clients.

B.      Whether the work activities described in subparagraph (A) constitute an integral and indispensable part of their jobs;

C.      Whether the work activities described in subparagraph (A) were pursued necessarily and primarily for the benefit of Defendant;

D.      Whether Defendant paid Plaintiff and Class Members either wages or overtime wages for the work activities described in subparagraph (A);

E.      Whether and at what rate of pay Defendant is required to pay Plaintiff and Class Members for the work activities described in subparagraph (A) under state law;

F.      Whether Defendant's decision not to pay Plaintiff and the Class Members for the work activities described in subparagraph (A) was willful or that Defendant reasonably should have known that it was work performed within the meaning of state law;

G.      Whether the Post Training Recruiters were improperly classified as exempt from Wisconsin's wage and hour law;

H.      Whether Post Training Recruiters share common traits, including but not limited to:

         i.      Post Training Recruiters lack the authority to formulate, affect or implement management policies and operating procedures.

         ii.      Post Training Recruiters lack the authority to commit the employer in matters that have significant financial impact.

4

        iii.     Post Training Recruiters lack the authority to waive or deviate

              from established policies and procedures without prior approval.

        iv.     Post Training Recruiters do not perform work directly

              related to the management or general business operations of

              Aerotek.

        v.     Post Training Recruiters do not customarily or regularly exercise

              discretion and independent judgment.

        vi.     Post Training Recruiters work under close supervision.

        vii.     Post Training Recruiters earn more than $700 per month.

      G.     Whether Defendant is liable under Chapter 109 of the Wisconsin Statutes.

    10.     The claims of Plaintiff are typical of the Class he seeks to represent.  Moreover, the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, as all Class Members are current or former employees who were not properly paid (or not paid earned overtime) for the work activities described in paragraph 9A.

    11.     Plaintiff will fairly and adequately protect the interests of the Class.  The interests of the named plaintiff are consistent with, and not antagonistic to, those of the Class.

    12.     The named plaintiff is represented by competent counsel, who are experienced in complex class action litigation, business and employment law, personnel management, computer technology and electronic discovery.  Both co-counsel are licensed to practice before the U.S. District Courts for the Eastern and Western Districts of Wisconsin, the Seventh Circuit Court of Appeals and the U.S. Supreme Court.  Co-counsel participated in the litigation and settlement on behalf of a national and Wisconsin class of claimants in *Sjoblom v. Charter*, (United States

District Court for the Western District of Wisconsin, Case No. (07-C-0451-C). As well as, *Capp v. Microsoft,  Goodel et al. v. Charter Communications, Wilcox et al. v. AEI, Inc. et al., Espenscheid et al. v. UniTek USA, LLC et al.,* and *Taylor v. Copper Family Community Care, Inc., et al.*

13.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy and is consistent with the legislative history and objectives of the FLSA.

14.     Maintenance of this action as a class action will promote the equitable administration of justice because pursuing claims on an individual basis would be disproportionately expensive.

15.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

16.     Defendant acted or refused to act on grounds generally applicable to the class, thereby necessitating declaratory and injunctive relief, which is a predominant goal of the Class Members.

## FACTUAL ALLEGATIONS

17.     Aerotek employs recruiters in hundreds of offices throughout the country.  Across the United States, at any given time, there are approximately 4,000 to 5,000 recruiters working for Aerotek.

18.     Aerotek has multiple offices in Wisconsin, which also employ Recruiter Trainees and Post-Training Recruiters.  At any given time, there are over 100 recruiters working for Aerotek in Wisconsin.

6

19.     As a staffing agency / recruiting firm, Aerotek is paid by employers in multiple fields of employment, which Aerotek divides into divisions or teams.  Examples of teams of recruiters include the engineering team, the scientific team, the commercial team and the energy team.

20.     Regardless of the team for which a recruiter works, the recruiters perform the same work.  As a regular part of their jobs, by telephone and electronic communication, they contact and receive calls from prospective employees to measure their interest in and suitability for available work and, if they are interested in and qualified for a job, to finalize an agreement between the employee and the client.

21.     Aerotek contracts with employers (clients) to find prospective employees in given fields.  When Aerotek successfully matches a prospective employee with an employer, Aerotek receives a fee.

22.     Recruiters are the employees who do the actual communicating with prospective employees in order to begin and complete the match.  A significant portion of a recruiter's work consists of reading off a script.  Recruiters have limited contact with the clients.

23.     Recruiters work under the direct supervision of an account manager.  Recruiters do not manage the business, nor do they manage a particular functional area of the business.  Recruiters apply established procedures and do the actual work of the business.

24.     Recruiters are also expected to meet with clients face-to-face from time to time along with their supervisors, who are Account Managers.  Typically, those meetings take place over lunch.

25.     Recruiters are expected to meet face-to-face with prospective employees, current contractors and Aerotek management as needed and directed.

26.     Every recruiter must complete a training period.  Recruiter Trainees are characterized as "non-exempt" under the FLSA and Wisconsin law by Aerotek.  The training period is typically 13 weeks long.

27.     Commencing with the third week of training,  Recruiter Trainees spent their days communicating with and receiving communication from prospective employees and clients.

28.     Aerotek required Recruiter Trainees to record the time they worked on timesheets.

29.     The typical day for a Recruiter Trainee would commence with a 7:30 a.m. in-person meeting with management.  At that meeting, Recruiter Trainees would receive a list of contacts to make throughout the day.

30.     All Recruiter Trainees were required to record one hour of unpaid time lunch time on their timesheets, except when Recruiter Trainees were "on call" over a lunch period.  In fact, Recruiter Trainees always worked over their lunch periods (whether "on call" or not), communicating with prospective employees or with clients, or meeting with coworkers or management employees or clients.

31.     Each working day, at approximately 5:30 p.m., Aerotek required all Recruiter Trainees to attend a meeting to assess what work needed to be completed for the day.  Recruiter Trainees were required to work an additional 30 to 60 minutes per day to complete their work following this meeting.

32.     Aerotek required Recruiter Trainees to work more than 40 hours per week, but they also instructed Recruiter Trainees not to  record more than 40 hours per week on their timesheets.

33.     Aerotek management knew that Recruiter Trainees were working in excess of 40 hours per week and receiving no compensation for the time worked in excess of 40 hours per week.

34.     It was Aerotek's policy and practice that Recruiter Trainees work in excess of 40 hours per week without receiving compensation for the time worked in excess of 40 hours per week.

35.     The work performed by Recruiter Trainees was an integral and indispensable part of their employment with Aerotek and was pursued necessarily and primarily for Aerotek's benefit.

36.     If a Recruiter Trainee successfully completed the training period, Aerotek characterized the Post-Training Recruiter as "exempt" under Wisconsin law.

37.     Post-Training Recruiters did not keep track of their time:  they were paid on a mix of salary and commission.

38.     The actual day-to-day duties of Post-Training Recruiters were the same as the duties performed by Recruiter Trainees, except that Post-Training Recruiters were required to work longer hours and to take and make calls over the weekend.  Post-Training Recruiters typically worked 60 hours per week.

39.     Post-Training Recruiters lack the authority to formulate, affect or implement management policies or operating practices.

40.     Post-Training Recruiters do not have the authority to commit the employer in matters that have significant financial impact.

41.     Post-Training Recruiters do not have the authority to waive or deviate from established policies and procedures without prior approval.

9

42.     Aerotek knew that it misclassified the Post-Training Recruiters as exempt under Wisconsin law.  It knew that Post-Training Recruiters were working in excess of 40 hours per week.  It intentionally failed to pay Post-Training Recruiters time-and-a-half for work performed in excess of 40 hours per week.

43.     The work performed by Post-Training Recruiters was an integral and indispensable part of their employment with Aerotek and was pursued necessarily and primarily for Aerotek's benefit.

44.     Drake began his employment with Aerotek in January, 2012.  He was hired as a Recruiter Trainee.

45.     Near the commencement of his employment with Aerotek, he was instructed not to  record more than 40 hours of work on his time sheet.

46.     After about two weeks into the training period, Drake attended every 7:30 a.m. meeting and every 5:30 p.m. meeting on the days he worked.  He worked until 6:00 p.m. or 6:30 p.m. on a daily basis.

47.     When not on call, Drake recorded an unpaid hour of lunch when in fact he worked over his lunch hour, with one exception.

48.     During his training period, Drake worked about 45 to 55 hours per week, but never received overtime pay for the five to fifteen hours of overtime he worked (with one minor exception described below).  In fact, he did not receive any pay for the time he worked in excess of 40 hours during his training period.

49.     During one week of his training period, Drake recorded two hours of overtime worked.  While Aerotek paid him time-and-a-half for those two hours of work, Aerotek management admonished him never to record overtime hours again.

10

50.    During Drake's training period, Aerotek knowingly and intentionally failed to pay him for the time he worked in excess of 40 hours, with the exception of two hours, as noted above.

51.    Drake passed the training period and began working as a Post-Training Recruiter. During his tenure as a Post-Training Recruiter, he worked between 50 and 60 hours per week.

52.    During his tenure as a Post-Training Recruiter, Drake attended the 7:30 morning meeting and the 5:30 evening meeting.

53.    As a Post-Training Recruiter, Drake lacked the authority to formulate, affect or implement management policies or operating practices.

54.    As a Post-Training Recruiter, Drake did not have the authority to commit the employer in matters that had significant financial impact.

55.    A Post-Training Recruiter's primary duty did *not* involve the performance of office or non-manual work directly related to the management or general business operations of the employer.  A Post-Training Recruiter's primary duty did *not* include the exercise of discretion and independent judgment with respect to "matters of significance."

56.    As a Post-Training Recruiter, Drake did not have the authority to waive or deviate from established policies and procedures without prior approval.

57.    During Drake's tenure as a Post-Training Recruiter, Aerotek knowingly and intentionally failed to pay him time-and-a-half for hours worked in excess of 40 per week.

58.    It was Aerotek' policy and practice that Post-Training Recruiters be misclassified as exempt and that Aerotek not pay Post-Training Recruiters time-and-a-half for work performed in excess of 40 hours per week.

11

59.     Plaintiff and Class Members were unaware of their rights under state law until prior to filing of this lawsuit.

## COUNT I:  VIOLATION OF WISCONSIN'S WAGE PAYMENT LAWS  – FAILURE TO PAY WAGES.

60.     Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

61.     The time Plaintiff and the members of the Recruiter Trainees Class spent engaged in the activities described in the above paragraphs is compensable under Wis. Admin. Code sec. DWD 272.12.

62.     Aerotek has failed to properly pay Plaintiff and the Recruiter Trainee Class Members their wages earned pursuant to Wis. Stats. Sec's. 104.02 and 109.03, and Wis. Admin. Code sec. DWD 272.03 by not paying them for the time spent engaged in the activities described in the above paragraphs.

## COUNT II:  VIOLATION OF WISCONSIN'S OVERTIME COMPENSATION LAW – FAILURE TO PAY FOR OVERTIME TO TRAINEES.

63.     Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

64.     The time Plaintiff and the Trainee Sub Class Members spent engaged in the activities described in the above paragraphs is compensable under Wis. Admin. Code sec. DWD 272.12.

65.     Aerotek failed to pay Plaintiff and the Trainee Sub Class Members at the rate of one-and-one-half times their regular hourly rate of pay for all hours worked in excess of 40 hours in a single week, as required by Wis. Stats. Sec's. 104.02 and 109.03, and Wis. Admin. Code sec. DWD 272.03.

**COUNT III:  VIOLATION OF WISCONSIN'S OVERTIME COMPENSATION LAW –
FAILURE TO PAY FOR OVERTIME TO POST-TRAINING
RECRUITERS – MISCLASSIFICATION CLAIM.**

66.      Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as
if fully set forth herein.

67.      The time Plaintiff and the Post Training Recruiter Sub Class Members spent
engaged in the activities described in the above paragraphs is compensable under Wis. Admin.
Code sec. DWD 272.12.

68.      Aerotek failed to pay Plaintiff and the Post Training Sub Class Members at the
rate of one-and-one-half times their regular hourly rate of pay for all hours worked in excess of
40 hours in a single week, as required by Wis. Stats. Sec's. 104.02 and 109.03, and Wis. Admin.
Code sec. DWD 272.03 due to its misclassification of the Post Training Recruiter Sub Class
members as exempt.

**COUNT IV:   VIOLATION OF WISCONSIN'S PAID ON DUTY MEAL PERIOD.**

69.      Plaintiff re-alleges and incorporates the preceding paragraphs of this Complaint as
if fully set forth herein.

70.      Plaintiff and the Wisconsin Class Members were not paid for work performed
over their ostensibly work-free lunch periods, nor were Plaintiff and the Wisconsin Class
Members free to leave the employer's premises for a meal break.

71.      Aerotek did not pay Plaintiff and the Wisconsin Class Members for the on-duty
meal period described in the foregoing paragraph, in violation of Wisconsin law.

**PRAYER FOR RELIEF.**

WHEREFORE, Plaintiff and the Class Members request that this Court:

13

A.      Certify the claims set forth in Counts I, II, III and IV as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Declare that Aerotek violated state law by not paying wages and overtime to Plaintiff and the Recruiter Trainees and the Post-Training Recruiters Class Members for the activities described in the above paragraphs;

C.      Permanently enjoin Aerotek from violating the state law by not paying wages and overtime to Plaintiff and the Class Members for the activities described in the above paragraphs;

E.      Award Plaintiff and the Class Members their unpaid regular hourly rate of pay for hours worked up to 40 hours per week and their unpaid overtime rate of pay for all hours of work in excess of 40 hours per week;

G.      Award the Class Members a penalty in an amount equal to 50 percent of the amount of their unpaid regular and overtime wages under Wis. Stat. sec. 109.11(2);

H.      Award all costs (including, but not limited to, pre and post judgment interest) and attorneys' fees incurred in prosecuting this action; and

I.      Such other relief as this Court deems just and proper.

### DEMAND FOR A JURY TRIAL.

Plaintiff hereby respectfully demands a jury trial pursuant to the Seventh Amendment of the United States Constitution and Fed.R.Civ.Pro. 38(a).

Respectfully submitted this 29th day of August, 2014.

GINGRAS, CATES & LUEBKE                    AXLEY BRYNELSON, LLP


s/ Robert J. Gingras                       s/ Michael J. Modl
Robert J. Gingras                          Michael J. Modl
Paul A. Kinne                              John C. Mitby
Heath P. Straka                            2 E. Mifflin Street, Ste. 200
8150 Excelsior Drive                       Madison, WI   53703
Madison, WI   53701-1808                   (608) 257-5661
gingras@gcllawyers.com                     MModl@axley.com
kinne@gcllawyers.com                       JMitby@axley.com
straka@gcllawyers.com