IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| ANDREW DRAKE, on behalf of himself and others similarly situated, | OPINION AND ORDER |
| Plaintiff, | 14-cv-216-bbc |
| v. | |
| AEROTEK, INC., | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Andrew Drake filed this lawsuit under state law on behalf of himself and similarly situated individuals to recover overtime pay for his work as a recruiter trainee and a recruiter for defendant Aerotek, Inc. Because plaintiff's second amended complaint and motion to certify two statewide classes presented questions concerning subject matter jurisdiction, I entered an order on July 31, 2015, requiring plaintiff to show cause why this case should not be dismissed for lack of subject matter jurisdiction. Dkt. #99. Plaintiff has responded that he agrees with the court's concerns and has moved for voluntary dismissal without prejudice. Dkt. ##100 and 102. Defendant opposes dismissal without prejudice, arguing that this court has subject matter jurisdiction over plaintiff's claims under either the Class Action Fairness Act, 28 U.S.C. § 1332(d), or the general diversity statute, § 1332(a). Dkt. #104. Defendant also has filed a motion for leave to file a sur-reply in further opposition to plaintiff's motion for voluntary dismissal, arguing that plaintiff made a

1

number of new arguments in his reply brief concerning defendant's calculations. Dkt. #111.

Having reviewed the parties' submissions, I conclude that this court has jurisdiction over plaintiff's claims under the Class Action Fairness Act. Accordingly, I will deny plaintiff's motion to voluntarily dismiss his claims without prejudice. I am granting defendant's motion for leave to submit a sur-reply because plaintiff raised a number of challenges in his opposition brief to defendant's amount-in-controversy calculations that defendant did not have an opportunity to address. Finally, a few scheduling matters need to be addressed. If plaintiff chooses to continue with his lawsuit, he must file his brief in response to defendant's motion for summary judgment within seven days of the date of this order. Defendant will have 10 days from the filing of the response in which to reply. I am striking the February 22, 2016 trial date and will set a status conference to revise the schedule in this case after an order is issued on plaintiff's motion for class certification.

BACKGROUND FACTS

Plaintiff has brought a proposed class action under Wisconsin state law and asserts subject matter jurisdiction under the Class Action Fairness Act, which requires an amount in controversy that exceeds $5,000,000. In his second amended complaint, plaintiff proposed three statewide classes: (1) between 500 and 1000 recruiters who worked for defendant during their training period; (2) recruiters who completed their training period and were classified as exempt from overtime compensation under state law; and (3) recruiters who worked through their lunch periods but were not paid for their time. Dkt.

#31 at ¶¶ 1 and 8. However, following discovery, plaintiff limited the scope of his proposed state classes to the following in his motion for class certification: (1) a trainee class consisting of approximately 147 members who were not paid for overtime hours they worked between March 21, 2012 and March 31, 2014; and (2) a recruiter class consisting of approximately 173 members who were classified as exempt on or after March 21, 2012. Dkt. #52 at 1-2. Given the small size of the proposed subclasses, the limited two-year time period and the relatively low hourly wages of the proposed class members ($14.42 an hour for trainees and $15.86 an hour for recruiters), I was concerned that plaintiff may not meet the jurisdictional amount in controversy requirements of § 1332 and ordered him to identify the basis for jurisdiction, explain whether the allegations in his second amended complaint meet the jurisdictional amount in controversy requirement and discuss the effect, if any, of the newly revised class allegations.

OPINION

A. Jurisdictional Amount in Controversy

With respect to the amount in controversy requirement, the Supreme Court has held that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) ("[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that

3

amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."). See also Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co., 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible."). Although what generally matters in determining the amount in controversy is the amount that was in controversy when the federal suit began, Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536, 538 (7th Cir. 2006), the Supreme Court has explained that "[t]he state of things [at the time the suit began] and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction. So also will the withdrawal of those allegations, unless they are replaced by others that establish jurisdiction." Rockwell International Corp. v. United States, 549 U.S. 457, 473 (2007). Therefore, "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Id. at 474 and n.6. See also United States ex rel. Fowler v. Caremark RX, L.L.C., 496 F.3d 730, 735 (7th Cir. 2007) (quoting Rockwell). The burden of proof rests on the party asserting the existence of jurisdiction, which in this case is defendant. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 427 (7th Cir. 1997).

In response to the court's show cause order, plaintiff states that he cannot meet the Class Action Fairness Act's five million dollar amount in controversy requirement because "[u]sing Defendant's numbers for class size and eight hours of overtime per work week owed

4

to each individual class member, damages, with the one-and-a-half times damages multiplier allowed under Wisconsin law, total approximately 2.5 million." Dkt. #100 at 2. He also contends that his individual claim cannot meet the $75,000 amount in controversy threshold under the general diversity statute because "[a]ssuming a one year period of employment (13 weeks as a recruiter-trainee and 39 weeks as a recruiter) (as is the case with Drake and many others) damages, including the 1.5 times multiplier under Wisconsin law, will result in class member damages of approximately $15,200.00 per individual." Id. at 3. In addition, plaintiff contends that attorney fees will not total enough to meet either jurisdictional amount in controversy requirement.

Although he does not cite any legal authority for doing so, plaintiff appears to base his jurisdictional analysis on the newly revised class allegations in his motion for class certification (147 trainees and 173 recruiters). Citing Rockwell, defendant contends that the appropriate measure is the second amended complaint but argues that even considering the more narrow class definitions proposed in plaintiff's motion for class certification, the court has jurisdiction under the Class Action Fairness Act. I agree with defendant that dismissal is not justified because it is not "legally certain" that plaintiff cannot meet the amount in controversy requirement of the Class Action Fairness Act, even considering the more narrow class definitions. (Although defendant also contends that the court has jurisdiction over the class members' individual claims under the general diversity statute, it is unnecessary to consider that argument at this time because defendant has shown that the court has jurisdiction over the class claims.)

5

B. Class Claims

As defendant points out, it is unclear exactly how plaintiff calculated $2.5 million in damages for the proposed classes and $15,200.00 for his individual damages. Even assuming a simple formula of (number of class members) x (overtime pay rate) x (eight hours of overtime a week) x (52 weeks a year—13 for trainees and 39 for recruiters) x (the statutory penalty of 1.5), the total does not equal $2.5 million for the proposed classes. On the other hand, defendant has submitted declarations from two data analysts employed by its attorneys who explain in detail how they calculated class damages totaling more than $5 million. Dkt. ##72 and 106. They used the following formula for both the trainee and recruiter class: number of workweeks (945 for all 147 trainees and 11,488 for all 173 recruiters up until the time of trial) x claimed overtime rate ($21.63 for trainees and $23.79 for recruiters) x 13 overtime hours a week x 1.5 (the 50% penalty sought by plaintiff under Wis. Stat. § 109.11(2)). Dkt. #106 at ¶ 10. Using this formula, defendant calculated $5,727,927 in damages. Id. at ¶ 11. Plaintiff challenges defendant's calculations on several grounds, which I will address separately below.

1. Number of class members

Plaintiff argues that defendant inappropriately included 14 different job titles within the proposed recruiter class and does not explain whether this increased the total number of class members beyond 173. However, Maria Pertsinides, a senior data analyst for defendant's lawyers, declared that the data included 173 individuals with 13 different job

6

titles related to the position of recruiter. Dkt. #72 at ¶ 4. Therefore, plaintiff's concerns are misplaced.

2. Future damages and attorney fees

Plaintiff contends that defendant incorrectly includes in its calculations damages for overtime compensation and attorney fees that have not yet been incurred. He says the only damages and fees that can be considered are those that plaintiff incurred as of the filing of the second amended complaint on September 12, 2014. Hart v. Schering-Plough Corp., 253 F.3d 272, 273 (7th Cir. 2001) ("The amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins."); Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 958-59 (7th Cir. 1998) ("Legal fees may count toward the amount in controversy when the prevailing party is entitled to recover them as part of damages," but "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed.").

Because defendant's calculations of the amount in controversy of plaintiff's class claims under the Class Action Fairness Act do not include any legal fees, plaintiff's argument with respect to fees is irrelevant. As defendant notes, plaintiff also relies improperly on Hart and on Meyers v. Bayer AG, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), for the view that damages that were or will be incurred after the filing of the second amended complaint cannot be considered part of the amount in controversy when the suit is filed. Hart and

7

Meyers address future attorney fees and not future damages, and the Court of Appeals for the Seventh Circuit has found that future damages put at issue by plaintiff's complaint are part of the amount in controversy. "The burden . . . is to show what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." <u>Rising-Moore v. Red Roof Inns, Inc.</u>, 435 F.3d 813, 816 (7th Cir. 2006). See also <u>Gardynski-Leschuck v. Ford Motor Co.</u>, 142 F.3d 955, 959 (7th Cir. 1998) ("A plaintiff who receives everything she asks for in the complaint has no remaining dispute with the defendant."). Although plaintiff does not specifically mention "future damages" in his complaint, he alleges that defendant knowingly misclassified recruiters as exempt under Wisconsin law and failed to pay them for more than 40 hours a week. E.g., dkt. #31 at ¶ 42. Nothing in the second amended complaint or the newly revised class allegations suggests that defendant has stopped this practice with respect to recruiters or that plaintiff is not seeking compensation for the overtime hours that potential class members have worked and will continue to work from the filing of the second amended complaint until the time of trial. Further, even limiting class damages to those actually incurred as of the date of defendant's response brief to the court's show cause order (August 14, 2015) results in an amount in controversy of $5,013,513. Dkt. #106 at ¶ 12.

3. <u>Overtime rate</u>

Plaintiff contends that he has never alleged that recruiters should have been paid

8

$23.79 an hour for the overtime hours they worked. He states without pointing to any evidence that recruiters were paid their base rate for those hours and were denied only the overtime premium of $7.93 an hour. However, this statement is inconsistent with the second amended complaint, in which plaintiff alleges that he and other potential class members were not compensated at all for more than 40 hours a week. Dkt. #31 at ¶¶ 33-34, 42, 48, 65 and 68. Plaintiff has failed to explain why he now believes that potential class members were paid their regular hourly rate for these overtime hours.

4. <u>Weekly overtime hours</u>

Even though plaintiff alleges in his second amended complaint and testified at his deposition that he worked five to 10 overtime hours a week as a trainee and 20 hours of overtime a week as a recruiter, and other putative class members signed declarations making similar claims, he now contends that each potential class member is entitled to only eight hours of overtime a week. He explains that after deposing several Aerotek management employees, he learned that defendant had a "Rip Zone" document that set forth a recruiter's "ideal" work week as 48 hours. Plaintiff argues that the document qualifies as a policy that "cannot cause damages greater than eight hours per week" per class member. However, plaintiff has not developed this argument and cites no authority supporting his contention that a document setting forth an "ideal" workweek definitively limits his damages and those of potential class members. As a result, plaintiff's assertion amounts to little more than a legal argument that cannot defeat jurisdiction. <u>Johnson v. Wattenbarger</u>, 361 F.3d 991,

9

993-94 (7th Cir. 2004) (internal citations omitted) ("A legal shortcoming does not equate to a jurisdictional shortfall. . . . 'Subject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim.' A demand is legally impossible for jurisdictional purposes when it runs up against a statutory or contractual cap on damages or when the theories of damages employ double counting."). Although plaintiff may be able to convince the court or a jury that defendant's Rip Zone document qualifies as a policy that limits defendant's liability with respect to overtime hours, he has not shown at this point that it is legally impossible for putative class members to recover damages for working more than eight hours of overtime a week. As a result, defendant's assumption that potential class members worked an average of 13 hours of overtime a week is reasonable in light of the declarations submitted by plaintiff and other potential class members who say they worked between five and 10 hours a week as a trainee and 10 and 20 of overtime hours a week.

## C. Conclusion

In sum, I conclude that defendant has shown that the court retains subject matter jurisdiction over plaintiff's state law claims under the Class Action Fairness Act. Because plaintiff's sole reason for moving for voluntary dismissal without prejudice is "on the grounds that the United States District Court lacks subject matter jurisdiction over the claims in this matter," dkt. #102 at 1, I am denying the motion.

ORDER

IT IS ORDERED that

1. Plaintiff Andrew Drake's motion for voluntary dismissal without prejudice for lack of subject matter jurisdiction, dkt. #102, is DENIED.

2. Defendant Aerotek, Inc.'s motion for leave to file a sur-reply, dkt. #111, is GRANTED.

3. Plaintiff's brief in response to defendant's motion for summary judgment, dkt. #96, shall be filed within seven days of the date of this order. Defendant shall have 10 days from the filing of the response in which to reply.

4. The February 22, 2016 trial date shall be stricken. The court will set a telephonic conference to revise the schedule in this case after it issues an order on plaintiff's motion for class certification.

Entered this 25th day of September, 2015.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge